AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

JESUS SOTO,

Defendant

Case No.  2:22-mj-00768 -DUTY

LODGED
CLERK, U.S. DISTRICT COURT
2/24/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: JB  DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
FEB 24 2022
CENTRAL DISTRICT OF CALIFORNIA
BY: NN  DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the dates of February 23, 2022 in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1708 | Possession of Stolen Mail |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ *Adam Savoie*
Complainant's signature

Adam Savoie, USPIS Postal Inspector
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  2/24/22

Judge's signature

City and state:  Los Angeles, California

Hon. Maria A. Audero, U.S. Magistrate Judge
Printed name and title

AUSA: Elia Herrera (x2024)

**AFFIDAVIT**

I, Adam Savoie, being duly sworn, declare and state as follows:

## I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against JESUS SOTO ("SOTO") for a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail).

2. This affidavit is also made in support of an application for a warrant to search the following digital device in the custody of the United States Postal Inspection Service ("USPIS"), in Los Angeles, California, as described more fully in Attachment A:

   a. One grey iPhone cellular telephone with a cracked screen, bearing MODEL A1688 and serial number FCC ID: BCG-E2946A, IC: 579C-E2946A (the "SUBJECT DEVICE").

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 1708 (Mail Theft and Possession of Stolen Mail), 371 (Conspiracy), 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information), 1029 (Access Device Fraud), 1344 (Bank Fraud), 1028A (Aggravated Identity Theft), 641 (Theft of Government Property), and 2115 (Post Office Burglary), (collectively, the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4.  The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND OF AFFIANT

5.  I am a U.S. Postal Inspector and have been so employed since April of 2019.  I am currently assigned to the Los Angeles Division, Alameda Domicile, Mail Theft Team.  The USPIS investigates criminal activity surrounding the United States Postal Service as well as violations of Title 18 of the U.S. Code.

6.  Prior to my employment with the USPIS, I was employed for ten years by the United States Marshal Service ("USMS") as a Deputy United States Marshal ("DUSM").  While assigned to the USMS, I worked federal fugitive warrant cases, district threat investigations, and court operations.  Prior to being a DUSM, I was employed by Immigration and Customs Enforcement ("ICE") as an Immigration Enforcement Agent ("IEA").  While assigned to ICE, I investigated immigration cases and presented cases for removal hearings and deportations.  Prior to ICE, I served with the Houston Police Department ("HPD") for approximately 11.5

years.  Prior to HPD, I served four years in the United States Navy ("USN").

8. During my tenure as a federal criminal investigator, I have conducted and assisted in multiple criminal investigations. I have gained knowledge and experience in conducting investigations involving mail theft, bank fraud, access device fraud, identity theft, and wire fraud.  Through the course of conducting these investigations, I have been involved in the use of the following investigative techniques: analyzing financial records, conducting physical surveillance, consensual monitoring and recording of non-telephonic surveillance communications, executing search and arrest warrants in the support of investigations, interviewing subjects and witnesses, and participating in undercover operations.

7. I hold a Bachelor of Science in Criminal Justice from the University of Houston Downtown in Houston, TX.  I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program in Glynco, Georgia.

### III. SUMMARY OF PROBABLE CAUSE

9. In the early morning of February 23, 2022, SOTO broke into a United States Post Office in Los Angeles, California, and stole a United States Postal Service ("USPS") vehicle key, mail with various names and addresses, a passport, identification cards, and a laptop computer.  The SUBJECT DEVICE was seized from SOTO upon his arrest.

## IV. STATEMENT OF PROBABLE CAUSE

10. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

### A. Break-in at the Hancock Post Office Discovered on February 23, 2022

11. On February 23, 2022, at approximately 1:43 AM, the Hancock Post Office security alarm system was activated. At approximately 1:58 AM, Postal Police Officers Xavier E. Ramos and Anthony J. Nguyen responded to the alarm activation.

12. Officers Ramos and Nguyen arrived at the Hancock Post Office at approximately 2:10 AM. Officers found the rear employee entrance door near the loading dock area to be unlocked. Furthermore, Officers observed a male individual, later identified as SOTO, inside the Hancock Post Office standing near a desk wearing blue gloves with mail in his hands.

13. Officers entered the workroom floor and identified themselves as Postal Police. SOTO then walked away from the officers towards the front of the post office and stopped in the hallway near the retail counter. Officer Nguyen asked SOTO if he worked at the post Office. SOTO replied, "No".

14. SOTO took off the blue gloves that he was wearing and placed them on the floor. In addition, SOTO placed a backpack that he was carrying on the floor.

15. Officer Nguyen gave SOTO commands to put his hands up and turn around and put his hands behind his back. Officer Ramos placed handcuffs on SOTO and conducted a pat down search.

Officer Nguyen then retrieved the backpack and both officers escorted SOTO outside the building.

### B. Stolen Mail, USPS Vehicle Keys, a USPS Credit Card, Identification Cards, and a USPS Computer Were Found in SOTO's Possession

16. Officers searched SOTO's backpack and found stolen mail, a USPS vehicle key, a USPS credit card (Voyager Gas Card), as well as identification cards in names of individuals other than SOTO. Officer Nguyen emptied the contents of SOTO's backpack and found both sealed as well as rifled mail, along with a USPS Voyager gas card, a USPS vehicle key, a laptop computer that appears to belong to the United States Postal Service, identification cards belonging to other individuals, and a U.S. passport. In addition, SOTO had a brown Michael Kors wallet containing someone else's commercial driver license, social security card, and Bank of America credit card. Officers indicated that SOTO did not have any true identification documents on him, but he identified himself as Jesus SOTO. Furthermore, SOTO told officers that he entered postal property while the gate to the rear parking lot was closing. SOTO said he then proceeded up the dock to the rear door and he found the employee entrance door was unlocked and he went inside the post office.

17. Later that morning, Inspector Michael Reilly and I responded to the Hancock Post Office incident. We met postal police officers at the Hancock Post Office. SOTO was in police custody and the stolen mail/property was in police possession.

18. Inspector Reilly and I noticed the rear employee entrance door was closed, but unlocked. We observed the post office to be ransacked with rifled mail throughout the workroom floor, open drawers and doors, as well as other work items scattered about. Postal Police advised that SOTO's phone (the SUBJECT DEVICE) was connected to a charging cable on a desk in the workroom floor area.

C. **SOTO's Mirandized Statements**

19. On February 23, 2022, at approximately 6:57 AM, I read SOTO his Miranda Rights and presented him a USPIS Warning and Waiver of Rights Form. Inspector Reilly was present and assisted with the interview of SOTO. SOTO stated that he understood his rights and agreed to speak with us and signed the waiver portion of the form. The interview was audio recorded. In addition, SOTO provided a written statement of the incident in which he admitted to entering the post office and taking items from the post office.

20. During the course of the interview, SOTO admitted to entering the rear employee entrance door of the post office. SOTO stated that he walked through the sliding gate as it was open and entered onto postal property. SOTO also said that he checked the rear door and discovered it was unlocked. SOTO admitted that he entered the post office and opened numerous mail pieces and packages while inside, and that he did not take anything from the packages. SOTO also admitted that he took mail, drivers licenses, a USPS vehicle key, and a computer from the post office. SOTO said that he was going to throw the items

away or maybe show the items to his friends. SOTO denied ever being involved with mail theft or in opening accounts with someone else's information. SOTO later stated that he planned to talk to some individuals about making money with the stolen mail. SOTO admitted that the postal police caught him inside the post office.

21. SOTO identified the SUBJECT DEVICE, which was connected to a charging cable on a desk in the workroom floor area, as his phone. SOTO granted oral and written consent to a search of the SUBJECT DEVICE, which is password protected. SOTO signed a USPIS consent form to search and provided the password for the SUBJECT DEVICE.

## V. TRAINING AND EXPERIENCE REGARDING MAIL AND IDENTITY THEFT

22. Based on my training and experience and information obtained from other law enforcement officers who investigate mail and identity theft, I know the following:

    a. People who steal mail are often involved in fraud and identity theft crimes. These individuals usually steal mail looking for checks, access devices, other personal identifying information (such as names, Social Security numbers, and dates of birth), and identification documents that they can use to fraudulently obtain money and items of value. Mail thieves often retain these items of value from stolen mail in order to make fraudulent purchases or sell the items to others in exchange for cash or drugs.

    b. It is common practice for individuals involved in mail theft, identity theft, bank fraud, and access device fraud

crimes to possess and use multiple digital devices at once. Such digital devices are often used to facilitate, conduct, and track fraudulent transactions and identity theft. Suspects often use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically or over the internet. They often employ digital devices for the purposes, among others, of: (1) applying online for fraudulent credit cards; (2) obtaining or storing personal identification information for the purpose of establishing or modifying fraudulent bank accounts and/or credit card accounts; (3) using fraudulently obtained bank accounts and/or credit card accounts to make purchases, sometimes of further personal information; (4) keeping records of their crimes; (5) researching personal information, such as social security numbers and dates of birth, for potential identity theft victims; and (6) verifying the status of stolen access devices.

      c. Oftentimes mail and identity thieves take pictures of items retrieved from stolen mail or mail matter with their cellphones.

      d. It is also common for mail and identity thieves to keep "profiles" of victims on digital devices. Such "profiles" contain the personal identifying information of victims, such as names, Social Security numbers, dates of birth, driver's license or state identification numbers, alien registration numbers, passport numbers, and employer or taxpayer identification numbers.

e. It is common for mail thieves, identity thieves, and individuals engaged in bank fraud, access device fraud, and identification document fraud to use equipment and software to print credit and identification cards, to create magnetic strips for credit cards, to use embossing machines to create credit cards, to use laser printers to create checks, and to use magnetic card readers to read and re-encode credit cards. Software relevant to such schemes can often be found on digital devices, such as computers.

f. Based on my training and experience, I know that individuals who participate in mail theft, identity theft, bank fraud, and access device fraud schemes often have co-conspirators, and often maintain telephone numbers, email addresses, and other contact information and communications involving their co-conspirators in order to conduct their business. Oftentimes, they do so on their digital devices. Suspects often use their digital devices to communicate with co-conspirators by phone, text, email, and social media, including sending photos.

## VI. **TRAINING AND EXPERIENCE ON DIGITAL DEVICES**

23. As used herein, the term "digital device" includes the SUBJECT DEVICE.

24. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

9

a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c. The absence of data on a digital device may be evidence of how the device was used, what it was used for, and

who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

        d. Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

    25. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

        a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

        b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

26. In addition to what has been described herein, the United States has attempted to obtain this data by requesting consent from SOTO to access the information on the SUBJECT DEVICE. SOTO granted oral and written consent to a search of the SUBJECT DEVICE, which is password protected. SOTO gave consent and signed the USPIS consent to search electronic device form (IS Form 8194). SOTO provided his cell phone password orally and on the form.

## VII. CONCLUSION

27. For all of the reasons described above, there is probable cause to believe that SOTO has committed a violation of Title 18, United States Code, Section 1708 (Possession of Stolen Mail). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 24th day of February, 2022.

_____
THE HONORABLE MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE